# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | No. 15-03059-01-CR-S-MDH |
| **JOSEPH EDWARD KYLE**, | |
| Defendant. | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Tammy Dickinson, United States Attorney, James J. Kelleher, Assistant United States Attorney, and Steven M. Mohlhenrich, Assistant United States Attorney, and the defendant, **JOSEPH EDWARD KYLE** ("the defendant" or "KYLE"), represented by Burton H. Shostak, Esq., and Cynthia L. Northcutt, Esq.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea**. The defendant agrees to and hereby does plead guilty to both counts of the two-count criminal information (hereinafter, "the information"), charging him in Count One with a violation of 18 U.S.C. § 666, that is, theft from programs receiving

federal funds, and charging him in Count Two with a violation of 18 U.S.C. § 1956(h), that is, a conspiracy to launder monetary instruments. The defendant also agrees to forfeit to the United States the property described in Forfeiture Allegations One and Two of the information. By entering into this plea agreement, the defendant admits that he knowingly and willfully committed these offenses, and is in fact guilty of these offenses.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

### A. Count One (Theft from Programs Receiving Federal Funds)

1) Defendant KYLE admits and acknowledges that between February 27, 2014, and September 23, 2014, at Ozark, Christian County, within the Western District of Missouri and elsewhere, he, an agent of Christian County, said government receiving in the one year period beginning January 1, 2014, approximately $693,595.20 from a variety of federal programs, embezzled, stole, and obtained by fraud, property worth $14,952.00 and under the control of Christian County, all in violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

2) Further, the defendant admits that between January 1, 2011, and October 14, 2014, he, as the Sheriff of Christian County, Missouri, knowingly submitted approximately twenty-two (22) fraudulent invoices or purchase orders for payment by Christian County, totaling $50,290.02, for goods and services that were never provided to Christian County.

3) In pleading guilty to Count One of the information, the defendant admits he knowingly and willfully stole and obtained by fraud $14,952.00 from Christian County during 2014, in violation of 18 U.S.C. § 666, and further acknowledges for purposes of restitution and sentencing guidelines calculation that he stole a total of $50,290.02 from Christian County during the years 2011 through 2014.

### B. Count Two (Money Laundering Conspiracy)

1) Defendant KYLE admits and acknowledges that between June, 2012, and on or about January 27, 2014, at Ozark, Christian County, within the Western District of Missouri and elsewhere, he conspired with the person identified in the information as SUBJECT #2 to knowingly conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, knowing that the transactions were

2

designed in whole or in part to conceal and disguise the nature, source, ownership, or control of the proceeds of specified unlawful activity, and that while conducting such financial transactions, he knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

*Specified Unlawful Activity*

2) The funds that were the subject of the money laundering conspiracy charged in Count Two of the information were derived from the following specified unlawful activity:

a) Between in or around January, 2008, and October, 2014, SUBJECT #2, devised and executed a scheme to defraud various individuals, known and unknown, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises. It was part of SUBJECT #2's scheme that:

b) SUBJECT #2 owned and operated various companies, and solicited individuals to invest in his companies, telling them their investment funds would be used to bring certain products to market, and the investors would share in the profits.

c) SUBJECT #2 made false statements to potential investors regarding the amount of capital he had raised from other investors, and how close his companies were to bringing a product to market.

d) SUBJECT #2 solicited individuals, including prior investors, to locate and refer to him potential investors, to distribute promotional materials for his companies, and to serve as personal references for him and to recommend that others invest in his companies.

e) SUBJECT #2 instructed investors to send funds via wire transfer to his companies' bank accounts. SUBJECT #2 also accepted checks from investors. Due to the nature of the banking system, and the fact that banks' computer systems communicated with each other using computer servers in diverse locations, both wire transfers and the deposit and clearing of checks caused wire transmissions to be sent in interstate commerce.

f) Once in possession of the investors' funds, SUBJECT #2 used a substantial amount of those funds to pay his personal expenses unrelated to the development and marketing of his companies' products, and to repay prior investors who had demanded the return of their money.

3

g) SUBJECT #2 solicited KYLE to assist him as a promoter of his scheme, to take advantage of the authority and prestige of his position as County Sheriff, to locate and refer to him potential investors, to distribute promotional materials, to serve as a personal reference, and to recommend that investors invest money in SUBJECT #2's companies.

h) SUBJECT #2 falsely informed potential investors that KYLE had personally invested funds with SUBJECT #2, and that KYLE had assembled an investment group, comprised of deputy sheriffs and others, to invest in SUBJECT #2's companies. In truth and in fact, KYLE did not invest his personal funds in SUBJECT #2's companies. Instead, SUBJECT #2 gave KYLE 50,000 shares in one of his companies, which shares SUBJECT #2 normally sold to investors at the rate of one dollar per share.

i) Between June, 2012, and January, 2014, SUBJECT #2 received investment funds totaling approximately $952,670.

*Manner and Means*

3) The manner and means used to accomplish the objectives of the money laundering conspiracy included, among others, the following:

a) Once SUBJECT #2 received an investor's funds, he used part of the investors' funds to pay KYLE for his services as a promoter by way of checks drawn on the accounts of his companies, consisting entirely of investor funds, which KYLE deposited to the Empire Bank account ending in 5493, held in the name of Five Rivers Management LLC. Additionally, SUBJECT #2 made one payment of investor funds from one of his companies to KYLE's political campaign.

b) Five Rivers Management, LLC ("Five Rivers") was a Missouri limited liability company, which KYLE registered with the Secretary of State of Missouri on or about June 7, 2011. Pursuant to the Articles of Organization, the purpose for which Five Rivers was organized was to: "Manage law enforcement/private security training logistics issues for independent contractors who act as instructors and/or acquire facilities and equipment to promote train[in]g of law enforcement officers, security personnel, and/or individuals who provide training." This purpose was totally unrelated to the business activities of SUBJECT #2's companies.

c) SUBJECT #2's payments to Five Rivers from his companies disguised the nature of the payments from SUBJECT #2's investors, because payments from the companies to a management company appeared to be some sort of business expense. In fact, even SUBJECT #2's accountant could not determine how to classify the

4

payments. Further, by depositing the payments to Five Rivers, KYLE concealed the source and nature of the payments, and made them appear to be receipts from KYLE's law enforcement and training company.

d) On or about June 11, 2012, "M.J." wired $50,000 from his business's bank account to the account of COMPANY #1, held at Bank of America, as an investment loan to SUBJECT #2 to assist in bringing his company's product to market. On or about June 12, 2012 SUBJECT #2 wired $40,000 from COMPANY #1's Bank of America account to COMPANY #2's account, held at Horizon Bank. On or about July 1, 2012 SUBJECT #2 wrote check number 1041 from COMPANY #2's account at Horizon Bank, in the amount of $3,000, payable to "Re-elect Joey Kyle."

e) On or about December 8, 2012, SUBJECT #2 provided $8,000 to KYLE, by way of check #1011, drawn on the account of COMPANY #1, held at Wells Fargo Bank, N.A., made payable to "5 Rivers."

f) On or about December 10, 2012, KYLE deposited check #1011 to the Empire Bank account ending in 5493, held in the name of Five Rivers Management LLC.

g) On or about March 14, 2014, SUBJECT #2 provided $2,350 to KYLE, by way of check #1004, drawn on the account of COMPANY #3, held at Wells Fargo Bank, N.A., made payable to "5 Rivers."

h) On or about March 14, 2013, KYLE deposited check #1004 to the Empire Bank account ending in 5493, held in the name of Five Rivers Management LLC.

i) On or about September 5, 2013, SUBJECT #2 provided $10,000 to KYLE, by way of check #2507, drawn on the account of COMPANY #4, held at Regions Bank, made payable to SUBJECT #2, which SUBJECT #2 endorsed.

j) On or about September 5, 2013, KYLE deposited check #2507 to the Empire Bank account ending in 5493, held in the name of Five Rivers Management LLC.

k) On or about January 23, 2014, SUBJECT #2 provided $1,000 to KYLE, by way of check #2571, drawn on the account of COMPANY #4, held at Regions Bank, made payable to "Five Rivers."

l) On or about January 27, 2014, KYLE deposited check #2571 to the Empire Bank account ending in 5493, held in the name of Five Rivers Management LLC.

4) In pleading guilty to Count Two of the information, KYLE admits and acknowledges the funds paid to him were the proceeds of SUBJECT #2's wire fraud scheme. Further, while KYLE believed SUBJECT #2's companies were legitimately engaged in efforts to bring their products to market, KYLE admits and acknowledges that, if put to proof, the United States could prove he knew the checks written to Five Rivers were the proceeds of some form of unlawful activity. Further, KYLE admits and acknowledges that, at the very least, he deliberately closed his eyes to SUBJECT #2's fraud, which should have been obvious to him, and, as a matter of law, his deliberate ignorance or willful blindness establishes his knowledge that the checks written to Five Rivers were the proceeds of some form of unlawful activity. Finally, KYLE admits and acknowledges the payments were made to Five Rivers in order to conceal and disguise the nature, source, ownership, and control of the funds.

### C. Forfeiture and Restitution

1) The defendant admits and acknowledges that he obtained $50,290.02 as a result of the offense charged in Count One of the information, agrees to the entry of a restitution order in that amount, and admits Forfeiture Allegation 1 of the information.

2) The defendant admits and acknowledges that he obtained $21,350.00 as a result of the offense charged in Count Two of the information, and admits Forfeiture Allegation 2 of the information.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon his plea of guilty to Count One of the information, charging him with violation of 18 U.S.C. § 666, that is, theft from

6

programs receiving federal funds, the maximum penalty the Court may impose is not more than ten (10) years' imprisonment, a $250,000 fine, a three (3) year term of supervised release, an order of restitution, and a $100 mandatory special assessment which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony. The defendant understands that upon his plea of guilty to Count Two (2) of the information, charging him with a violation of 18 U.S.C. § 1956(h), that is, a conspiracy to launder monetary instruments, the maximum penalty the Court may impose is not more than twenty (20) years' imprisonment, a fine of not more than $500,000 or twice the value of the property involved, whichever is greater, a three (3) year term of supervised release, an order of restitution, and a $100 mandatory special assessment which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

      6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. In determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission. While these Guidelines are advisory in nature, and the Court ordinarily would have the discretion to impose a sentence either less than or greater than the court-determined advisory Guidelines range, in this instance the parties agree, pursuant to Rule 11(c)(1)(C), that the Court must impose sentence as follows:

- **On Count One, the defendant will be sentenced to a term of imprisonment of 12 months and one day;**

- **On Two, the defendant will be sentenced to a term of imprisonment of 12 months and one day, to run concurrently with the sentence for Count One;**

- **The defendant will be sentenced to a three-year term of supervised release (three years on each count, to run concurrently);**

- **No fine will be imposed; and**

7

- **The Court will order forfeiture and restitution as set forth in the last sub-paragraph of the factual basis section of this plea agreement (paragraph 3, above)**.

b.  If the court accepts this plea agreement, it must inform the defendant that sentence will be imposed in accordance with this agreement of the parties.  If the court rejects this plea agreement, it must, on the record and in open court, inform the parties that the court rejects the plea agreement, advise the defendant personally that because the Court is rejecting the plea agreement the Court is not required to impose sentence in accordance with the agreement of the parties, give the defendant an opportunity to withdraw defendant's guilty plea, and further advise the defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

c.  The Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing.

d.  In addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to five years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed.

e.  If the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to three years without credit for time previously spent on supervised release.  In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed five years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release.

f.  The Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range.

g.  Any sentence of imprisonment imposed by the Court will not allow for parole.

h.  The Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office.

i.  The defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the crimes charged in the information for which it has venue and which arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party.

9

8. **Defendant's Further Agreements**.

   A. **The defendant agrees to resign his office as County Sheriff of Christian County, Missouri, immediately and with immediate effect.**

   B. **The defendant agrees, immediately, to disclose to the United States and surrender to the Christian County Sheriff's Office any and all property, wherever located, in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party, that were purchased with Christian County funds, including any and all arms, ammunition, vehicles, equipment, preserved food (meals-ready-to-eat), supplies, or any funds or property obtained through the sale, barter or other disposition of property purchased with Christian County funds.**

9. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

10. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has

been formally accepted by the Court, the defendant may withdraw his pleas of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

11. **Agreed Guidelines Application.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable."

    b. Pursuant to U.S.S.G. § 3D1.2(d), Counts One and Two are considered to be a single group of "closely related counts" because the offense level is determined largely on the basis of the total amount of harm or loss. Pursuant to § 3D1.3(b), because the counts involve offenses of the same general type to which different guidelines apply, the count with the highest offense level is used to determine the sentencing range.

    c. For Count One (Theft from Programs Receiving Federal Funds) the following calculations apply:

- U.S.S.G. § 2B1.1(a)(2) provides for a **base offense level of six**;

- Pursuant to U.S.S.G. § 2B1.1(b)(1)(C), **four levels** are added as result of the loss amount exceeding $10,000.00;

- Pursuant to § 3B1.3, **two levels** are added because the defendant abused his trust as elected County Sheriff of Christian County, Missouri in a manner that significantly facilitated the theft charged in Count One of the information; and

- The parties calculate the adjusted offense level for Count 1, prior to credit for acceptance of responsibility, to be **twelve**.

    d. For Count 2 (Money Laundering Conspiracy), the following calculations apply:

11

- U.S.S.G. § 2S1.1(a)(1) provides for a base offense level of the offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense; and (B), that offense level can be determined.

- The defendant was a party to the wire fraud conspiracy from which the laundered funds were derived, for which U.S.S.G. § 2B1.1(a)(1) provides for a **base offense level of seven**. Pursuant to § 2B1.1(b)(1)(G), **14 levels** are added because the loss amount for the wire fraud conspiracy was $952,670. Pursuant to § 3B1.3, **two levels** are added because the defendant abused his trust as elected County Sheriff of Christian County, Missouri in a manner that significantly facilitated the wire fraud conspiracy. Consequently, the parties calculate the offense level for the wire fraud conspiracy, and therefore the base offense level for Count Two, to be **24**.

- Pursuant to § 3B1.3, **two levels** are added because the defendant was convicted under 18 U.S.C. § 1956.

- The parties calculate the adjusted offense level for Count 2, prior to credit for acceptance of responsibility, to be **26**.

e. Because the adjusted offense level for Count 2 is higher than for Count One, pursuant to § 3D1.3(b), the parties calculate the defendant's adjusted offense level, prior to credit for acceptance of responsibility, to be **26**.

f. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a **three-level reduction** pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty pleas, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility.

g. The defendant's criminal history category appears to be **category I**. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office.

12

Case 6:15-cr-03059-DGK   Document 5   Filed 05/20/15   Page 12 of 20

h. Based on an estimated **total offense level of 23**, and an estimated **criminal history category of I**, the parties estimate that the advisory guidelines range for incarceration is **between 46 and 57 months.**

i. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty.

**j. Although the parties' agreed sentence, set forth in paragraph 6 above, falls below the guidelines range as calculated by the parties, the defendant and the United States confirm that the agreed sentence would be both reasonable and authorized by law.**

k. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay.

l. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

12. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

13. **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then

13

any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

14. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

   a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

   b. comment on the evidence supporting the charges in the information;

   c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and,

   d. oppose any post-conviction motions for reduction of sentence, or other relief.

15. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

   a. the right to plead not guilty and to persist in a plea of not guilty;

   b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

   c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

   d. the right to confront and cross-examine the witnesses who testify against him;

   e. the right to compel or subpoena witnesses to appear on his behalf; and,

    f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

16. **Waiver of Appellate and Post-Conviction Rights.**

    a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

    b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

17. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

    a. The Court must order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order

restitution in connection with the conduct charged in any counts of the indictment which are to be dismissed and all other uncharged related criminal activity.

  b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

  c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

  d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

  e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

  f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

  g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $200 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

  h. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

  i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an

interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

18. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

19. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

20. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

21. **<u>Defendant's Representations.</u>** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

22. **<u>No Undisclosed Terms.</u>** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

TAMMY DICKINSON
United States Attorney

Dated: May 20, 2015         */s/ James J. Kelleher*
                            JAMES J. KELLEHER
                            Assistant United States Attorney


Dated: May 20, 2015         */s/ Steven M. Mohlhenrich*
                            STEVEN M. MOHLHENRICH
                            Assistant United States Attorney


I have consulted with my attorneys and fully understand all of my rights with respect to the offenses charged in the information. Further, I have consulted with my attorneys and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorneys. I understand this plea agreement and I voluntarily agree to it.


Dated: May 20, 2015         */s/ Joseph E. Kyle*
                            JOSEPH EDWARD KYLE
                            Defendant

19

We are defendant Joseph Edward Kyle's attorneys. We have fully explained to him his rights with respect to the offenses charged in the information. Further, we have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. We have carefully reviewed every part of this plea agreement with him. To our knowledge, Joseph Edward Kyle's decision to enter into this plea agreement is an informed and voluntary one.

Dated: May 20, 2015         */s/ Burton H. Shostak*
                            BURTON H. SHOSTAK
                            Attorney for Defendant


Dated: May 20, 2015         */s/ Cynthia L. Northcutt*
                            CYNTHIA L. NORTHCUTT
                            Attorney for Defendant